IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC CONRAD,

           Plaintiff,

v.

JACKSON COUNTY, a political subdivision
of the State of Oregon and JACKSON
COUNTY MASTER GARDNER ASSOC., an
unincorporated association,

           Defendants.

Case No. 1:13-cv-0756-CL

**ORDER**

CLARKE, Magistrate Judge.

    This matter comes before the court on defendant Jackson County's motion for partial summary judgment (#17) against defendant Jackson County Master Gardner Association. The Association filed a response (#24), and oral argument occurred on February 12, 2014. For the reasons stated below, Jackson County's motion is GRANTED.

Page 1 – ORDER

## BACKGROUND

Except where noted, the material facts are not in dispute. Plaintiff Eric Conrad ("plaintiff") filed this personal injury action on May 3, 2013, alleging that he sustained injuries while acting as a vendor and in operation of his booth during the Jackson County Master Gardeners Association ("JCMGA") Show at the Jackson County Fairgrounds on May 7, 2011. Compl, ¶ 2. The JCMGA's 2011 Show was conducted at the Compton Arena, which is within the Exposition Park in Jackson County. Plaintiff's complaint alleges that he tripped over a pipe after leaving the Compton Arena on his way to the vendor parking lot designated by JCMGA. The vendor lot is located within the Exposition Park in the Jackson County Fairgrounds. Compl, ¶ 3. Plaintiff allegedly fell on his right side and sustained injuries, and asks for economic and non-economic damages. Compl, ¶¶ 3-6.

The JCMGA is an unincorporated association of individuals who have received the master gardener certificate from Oregon State University. Decl. Ella Self, ¶ 5. The JCMGA puts on a Master Gardener Show and Sale annually at the Exposition Park in Jackson County Fairgrounds. *Id.* at ¶ 3. On or about October 27, 2010, defendant Jackson County ("County") executed a written agreement with JCMGA ("Agreement"). The purpose of the Agreement was to allow JCMGA to use premises owned by the County ("Premises") on May 5-8, 2011, for the Master Gardeners Show and Sale. The Agreement provides, in pertinent part[1]:

> Permittee [JCMGA] to do own setup and cleanup. This includes ... policing areas used to be sure that all trash and debris has been properly disposed of.
> ...
> PERMITTEE [JCMGA] agrees to conduct its activities upon the premises so as not to endanger any person lawfully thereon and to indemnify and save harmless the JACKSON

---

[1] The Agreement was drafted by the County. *See* Decl. Self, ¶ 31. JCMGA alleges that the County refused their attempts to negotiate the terms of the Agreement. Mem. in Opp., 4. JCMGA also alleges that the Exposition Park is the only venue in Jackson County suitable to hold the Master Gardner Show and Sale. Decl. Self, ¶ 31.

Page 2 – ORDER

COUNTY FAIR BOARD, JACKSON COUNTY BOARD OF COMMISSIONERS, AND JACKSON COUNTY EXPO/FAIRGROUNDS employees against any and all claims for loss, injury, or damage to persons or property damage ... arising out of activities conducted by PERMITTEE and its employees.

PERMITTEE agrees that it accepts the premises in the condition in which they are found and agrees the premises are adequate and safe for PERMITTEE'S purposes.
...

11. EXHIBITORS: If Permittee makes any part of the premises under this agreement available to other persons as exhibitors as part of this use, the exhibitors shall be subject to all of the provisions of this agreement and to the authority of the JCEP under those conditions, but in any event, Permittee shall be fully responsible for all acts or omissions of the exhibitors as if they were its agents or employees.

13. RESPONSIBILITY FOR PROPERTY: JCEP assumes no responsibility to Permittee for any property placed on the premises by Permittee, or exhibitors, or for any loss incurred by Permittee as the result of any injury or damage to persons or property sustained during or by reason of the occupancy of the premises by Permittee under this agreement, it being understood that Permittee accepts the premises as-is and based upon Permittee's own inspection of them as to their condition of safety.

14. INSURANCE AND INDEMNITY: Permittee agrees to conduct its activities upon the premises so as not to endanger any person lawfully thereon and to indemnify and save harmless JCEP against any and all claims of employees of Permittee or any contractor or subcontractor arising out of the activities conducted by Permittee, its employees, patrons, guests or exhibitors. Permittee shall deliver to JCEP, not less than fourteen (14) days before the opening of the first day of use and occupancy, satisfactory evidence of liability insurance, including a copy of the endorsement adding JCEP as an additional insured; liability minimum shall be $1,000,000, combined single limit bodily injury and property damage per occurrence including $100,000, fire, legal liability for damage or injury to premises, building or grounds of JCEP in the care, custody and control of Permittee ....

Decl. Koellermeier, Ex. 1.

The County filed cross-claims for defense and indemnity from JCMGA and now moves for partial summary judgment on its cross-claims, arguing that it is entitled to defense and indemnity under the Agreement.

## SUMMARY JUDGMENT

The court must grant summary judgment if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An

issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court views the evidence in the light most favorable to the non-moving party and draws "all justifiable inferences" in that party's favor. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (*quoting Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* FED. R. CIV. P. 56(e)). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (*quoting Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)).

## DISCUSSION

JCMGA argues that the County's motion must be denied because (1) the indemnity provisions of the Agreement do not apply to plaintiff's claims; (2) the indemnity provisions are unenforceable because ambiguous; (3) the indemnity provisions are unenforceable because they would create harsh results contrary to public policy. In this diversity action under Oregon law, the substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Under Oregon law, whether a duty to defend exists is a question of law for the court. *Nat'l Fire Union Ins. Co. of Pittsburgh v. Starplex Corp.*, 220 Or. App. 560, 573 (Or. App. 2008). The Oregon Supreme Court uses the "eight corners" rule for determining whether a duty to defend exists. *Ledford v. Gutoski*, 319 Or. 397, 399-400 (1994). Under the eight corners rule,

an insurer may only look at the complaint and the insurance policy to decide if "the complaint could, without amendment, impose liability for conduct covered in the policy." *Id.* The *Ledford* court also held that an insurer owes a duty to defend if the claimant provides any basis for recovery against the insured. *Id.* at 400. Further, the insurer has the duty to defend the entire action "[if] the complaint alleges facts, that if proved, would impose liability covered by the policy ... even if some of the conduct alleged would not be covered." *Drake v. Mut. of Enumclaw Ins. Co.,* 167 Or. App. 475, 478 (2000).

The County argues that under *Ledford* and *Starplex*, a contractual indemnitor owes a duty to defend once the plaintiff provides some basis for recovery. Def. Mem., 5. The County argues that JCMGA is obligated to indemnify the County for any and all claims and associated damages flowing from an award in favor of plaintiff against Jackson County. JCMGA argues that there is no duty to indemnify the County, and that the duty to defend therefore does not attach. Because the duty to indemnify depends on the proper interpretation of the Agreement, we turn to the Agreement terms.

I.  **The Agreement Terms**

The parties dispute the proper interpretation of the Agreement's terms. After careful consideration of the complaint and the Agreement, the courts makes findings following the eight corners standard employed under Oregon law. *See Ledford*, 319 Or. at 399-400.

**1. Plaintiff's Status**

As noted, plaintiff's complaint alleges that he acted as a "vendor/representative" at the Master Gardner Show on the date of the alleged injury. Plaintiff also alleges that he was a "business invitee" of JCMGA. The Agreement states that JCMGA "shall be fully responsible for all acts or omissions of the exhibitors as if they were its agents or employees." Decl. Koellermeier, Ex.

1, ¶11. Moreover, the Agreement provides that the County "assumes no responsibility to Permittee ... for any loss incurred by Permittee as the result of any injury or damage to persons or property sustained during or by reason of the occupancy of the premises by Permittee under this agreement." *Id.* at ¶13. Plaintiff is therefore included in the list of potential claimants or "guests" as set out in the Agreement's indemnity provision. *Id.* at ¶14.

### 2. Premises Covered

The Agreement states that JCMGA is responsible for ensuring the safety of the areas used for the Show. Decl. Koellermeier, Ex. 1, ¶11. Plaintiff's complaint does not limit JCMGA's management and operation of the Show to the confines of the Compton Arena. Plaintiff was allegedly injured as he was walking towards his vehicle at the end of the day after participating in the Show. Plaintiff alleges that "as a condition of his participation in said Show, plaintiff ... was required to park and leave [his] vehicle[] in a dirt lot designated for that purpose." The Agreement does not exclude the vendor parking lot and access paths from its definition of the premises to be used by the JCMGA. Based on the complaint and Agreement, JCMGA appears to be responsible for management and operation of reasonable ingress and egress routes to and from the designated parking lot to be used for the Show. The alleged injury thus occurred in an "area" in "use" by JCMGA. On this record, the court finds that the Agreement's indemnity and defense provisions cover the area where plaintiff allegedly sustained an injury. *See* Decl. Koellermeier, Ex. 1, ¶¶13, 14.

### 3. Acceptance of Premises "As Is"

JCMGA argues that the "as is" provisions in the Agreement do not apply to the portion of the premises where the alleged injury occurred, because the pipe was placed there after the parties executed the Agreement. As noted above, the Agreement contains the following provision:

"[JCMGA agrees to] accept the premises in the condition in which they are found and agrees the premises are adequate and safe for PERMITTEE's purpose." Decl. Koellermeier, Ex. 1. This provision includes any conditions to the ingress and egress paths to the parking area that JCMGA used for its vendors. Moreover, JCMGA was required by the terms of the Agreement to "[police] areas used to be sure that all trash and debris has been properly disposed of." *Id.* Under the eight corners of the complaint and Agreement, the court can find no indication that the "as is" language in the Agreement was intended to apply to the condition of the premises *only* at the time the Agreement was signed, to the exclusion of the premises' condition at the time of the Show. Therefore, the court finds that JCMGA assumed liability for the conditions of the path to the vendor parking area at the time of the Show.

### 4. Parties Covered

JCMGA argues that the first indemnity provision does not include the County in its list of entities covered. The County points out that the Agreement is expressly entered into between "JACKSON COUNTY, acting by and through its Jackson County Fair Board Manager and authorized employees, hereinafter referred to as JCEP," and JCMGA. The court finds that Jackson County is thus expressly included in the definition of "Jackson County Fair Board Manager" or "JCEP," and is covered by the Agreement's indemnity and defense provisions.

### 5. Activities Covered

JCMGA argues next that the provision entitled "INSURANCE AND INDEMNITY" does not apply to plaintiff's claim because it arises out of an activity of the County. JCMGA contends that plaintiff's accident occurred in an area where Jackson County had recently performed construction activities, and appear to infer that the pipe which plaintiff allegedly tripped over is part of a County activity.

The court disagrees. By its terms, the insurance and indemnity paragraph applies to "claims of employees of Permittee or any contractor or subcontractor arising out of the activities conducted by Permittee, its employees, patrons, guests, or exhibitors." Decl. Koellermeier, Ex. 1, ¶14. The Complaint indicates that JCMGA instructed plaintiff to park in a designated vendor parking lot. As noted, plaintiff allegedly sustained injuries when he tripped on a pipe on his way to the vendor parking lot. Further, JCMGA had knowledge of the County's construction activities prior to the date of the show, and by the Agreement was responsible for the policing the area and ensuring the safety of the premises. Self Decl., ¶¶18, 22; Decl. Koellermeier, Ex. 1. On this record, the Show is the relevant "activity" contemplated by the Agreement, and that plaintiff's injury arose out of his participation in the Show. The court thus finds that plaintiff's claim arises from the Show, considered in its entirety.

Based on these findings, the court rejects JCMGA's argument that the indemnity provisions in the Agreement do not apply to plaintiff's claims. In so doing, the court finds that the Agreement terms are sufficiently clear for the purposes of adjudicating the County's motion, and therefore also rejects the JCMGA's argument that the indemnity provisions are unenforceable because ambiguous.

### III.  Oregon Indemnity Law

JCMGA argues that Oregon law precludes this court from enforcing a contract that indemnifies a party for its own negligence, citing *Southern Pacific v. Layman*, 173 Or. 275, (1944). *Layman* held that an indemnity contract would not be construed to cover lossess caused by the indemnitee's own negligence, unless such intention was expressed in clear terms in the agreement. *Id.* at 279-80; *see also Waterway Terminals Co. v. P.S. Lord Mech. Contractors*, 242 Or. 1 (1965); *Estey v. MacKenzie Engineering Incorporated*, 324 Or. 372, 376 (1996)

("Agreements to exonerate a party from liability or to limit the extent of the party's liability for tortious conduct are not favorites of the courts but neither are they automatically voided. The treatment courts accord such agreements depends upon the subject and terms of the agreement and the relationship of the parties"). The *Layman* court explained that indemnity contracts are generally intended to provide against liability of the indemnitee through the operations of the indemnitor, or caused by physical conditions that are under the indemnitor's control. *Layman*, 173 Or. at 281-82.

Here, plaintiff's alleged injury was caused by the operations of JCMGA together with physical conditions for which JCMGA assumed full responsibility. Decl. Koellermeier, Ex. 1. JCMGA exercised control over the premises by directing its exhibitors to park in the vendor lot, which was connected to the Compton arena by the path where plaintiff fell. The safety of the premises and the obligations owed for any claims brought by JCMGA's "guests" and "exhibitors" to the County is expressly provided for in the Agreement. *Layman* and its progeny, therefore, do not preclude partial summary judgment in favor of the County on the issues presented.

## IV.  Harsh Results and Public Policy

JCMGA next argues that if the court finds that the indemnity provisions apply, it "would impose a particularly harsh and unequitable obligation" on JCMGA. Mem. in Opp., 14. JCMGA asks that the court defer ruling on the County's motion to allow time for more discovery on the issue of just "how harsh and unequitable the application of this indemnity provision would be." *Id.* at 15. JCMGA, however, does not cite any legal authority to suggest that holding a nonprofit organization to the terms on an indemnity and defense agreement is unusually harsh. In this case, JCMGA made a business decision to enter an agreement with the County that

involved acceptance of risk, and purchased an insurance policy to protect against that risk. The 2011 Master Gardener Show and Sale was not the first or last planned JCMGA event that contemplated an indemnity and defense agreement with the County. *See* Decl. Koellermeier, Ex. 1. On this record, the court rejects the contention that enforcement of the Agreement imposes a "harsh and unequitable obligation."

Finally, JCMGA argues that the indemnity provisions are void as against public policy. To that end, JCMGA argues that the County provides an important public service in operating the Exposition Park, and as such cannot "contract away its duties to provide reasonable safe premises to organizations which rent facilities." Mem. in Opp., p. 15. Even if the County was somehow negligent in conducting construction activities at the Exposition Park, however, JCMGA had knowledge of the County's construction activities prior to the date of the show. Self Decl., ¶¶18, 22. As discussed above, JCMGA contractually agreed to inspect and police the areas used for the Show, and insured against the risks accepted in the Agreement. Decl. Koellermeier, Ex. 1. The court therefore cannot find that enforcement of the indemnity and defense provisions would be against public policy.

## CONCLUSION

For the foregoing reasons, Jackson County's motion for partial summary judgment is GRANTED.

IT IS SO ORDERED.

DATED this _____ day of February, 2014.

MARK D. CLARKE
United States Magistrate Judge